58 S.W.3d 242 (2001)
In the Matter of J.L.H., a juvenile.
No. 08-00-00548-CV.
Court of Appeals of Texas, El Paso.
September 13, 2001.
*244 M. Clara Hernandez, El Paso County Public Defender, Penny Lee Andersen, Assistant Public Defender, El Paso, for Appellant.
Jose R. Rodriguez, County Attorney, Pierre Terrell Williams, El Paso, for Appellee.
Before LARSEN, McCLURE, and CHEW, JJ.

OPINION
LARSEN, Justice.
J.L.H. appeals her adjudication of delinquency by committing the offense of burglary of a habitation. In two points for review, she challenges the legal and factual sufficiency of the evidence to support the adjudication. We affirm.

Standard of Review
Consistent with due process requirements, no person may be convicted of a criminal offense and denied his or her liberty unless criminal responsibility for the offense is proved beyond a reasonable doubt.[1] This due process requirement applies to suits alleging a juvenile has engaged in delinquent conduct.[2]
In reviewing the legal sufficiency of evidence supporting a finding that a juvenile committed an offense which constitutes delinquent conduct, we apply the *245 Jackson v. Virginia[3] standard.[4] Under this standard, we review all evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[5]
In reviewing the factual sufficiency of evidence supporting a finding that a juvenile committed an offense which constitutes delinquent conduct, we again review all the evidence in determining whether the State met its burden of proof beyond a reasonable doubt, but not in the light most favorable to the verdict.[6] Only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust will we conclude that there is factually insufficient evidence.[7]

Waiver of factual sufficiency challenges
Initially, we note that the State contends J.L.H. waived her factual sufficiency challenges by failing to file a motion for new trial. Indeed, the Texas Supreme Court held in 1993 that Tex.R. Civ. P. 324(b), requiring a motion for new trial be filed in order to complain of factual sufficiency on appeal, applies to juvenile proceedings.[8] Our sister court has recently confirmed that holding.[9] Nevertheless, for the reasons set out here, we conclude that the Supreme Court's pronouncement on the issue has since been superceded by developments in our current juvenile system.
At one time, the safeguards afforded adults in criminal proceedings did not apply to juvenile proceedings.[10] The juvenile system was originally created for treatment and rehabilitation of children, and focused on the best interest of the child. This distinguished the juvenile courts from adult criminal courts, which direct their efforts primarily toward punishment.[11] Because of this difference in purpose, juveniles were denied many rights, both procedural and substantive, that were routinely afforded adults.[12]
The juvenile system's philosophy of treatment and rehabilitation has metamorphosed, however, into one much focused on punishment that is in many ways barely distinguishable from our adult criminal system. Three of the purposes expressed in the Juvenile Justice Code are to provide for the protection of the public and public safety, to promote the concept of punishment for criminal acts, and to protect the welfare of the community and to control the commission of unlawful acts by children.[13] The "grim reality" of today's juvenile system is a far cry from the days of its creation as a "system wherein juveniles were rehabilitated rather than incarcerated, protected rather than punishedthe very antithesis of the adult criminal *246 system."[14] We believe this change has eroded the original logic for denying juveniles the same procedural protections as adults.[15] We therefore recognize that the juvenile system is, in many ways, more closely related to criminal than civil proceedings and it follows that most advocates practicing in the juvenile system will possess greater expertise in criminal than civil procedure.
Moreover, we note that in 1993 when the Supreme Court found a motion for new trial must be filed to preserve factual sufficiency in a juvenile case, there was no general factual sufficiency review in adult criminal cases. Only in 1996, with Clewis v. State,[16] did the Court of Criminal Appeals acknowledge a right to factual sufficiency review of a conviction. Following Clewis, this Court, in Davila v. State,[17] held that a factual sufficiency challenge need not be preserved by a motion for new trial in a criminal case.[18] In discussing that question (which at the time was one of first impression) we stated:
Without question, in the civil context, a motion for new trial is required to preserve a challenge to the factual sufficiency of the evidence to support a jury finding. This requirement has been applied in the quasi-criminal hybrid of juvenile proceedings. Although juveniles are prosecuted for criminal offenses, the Texas Family Code mandates that an appeal from an order of a juvenile court is to be predicated upon the civil standards. As a result, we have previously determined that a juvenile who complains on appeal of the factual sufficiency of the evidence must preserve the complaint in a motion for new trial.[19]
We think the time has come, however, to acknowledge that juvenile law is much more criminal than civil in nature. In examining the drift of juvenile law from its civil roots to its criminal present, we conclude it makes no sense to require procedural hurdles of juveniles which adults need not meet in parallel circumstances. If anything, juveniles should be afforded more opportunity for appellate review of their claims, consistent with the stated purpose of the Juvenile Justice Code that it be construed:
[T]o provide a simple judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.[20]
We therefore conclude that a juvenile need not file a motion for new trial raising factual sufficiency of the evidence in order to raise that issue on appeal. Having reached that conclusion, we will address both J.L.H.'s points for review.

Facts
The State presented two witnesses at trial; the juvenile presented no evidence. The State called Francine Morrison and her mother Antonia Morrison. Both women live at 10308 Dyer Street, Space 304, El Paso, Texas. Antonia Morrison leases the trailer, and is required to list all persons *247 living in the trailer on her lease, one of whom is Francine. Also living there are Francine's two daughters, two years old and two months old, and Francine's younger sister, Joanna Morrison, age fifteen (also Antonia's daughter).
On October 27, 2000, all five residents of the trailer were home. Francine was in her bedroom with the toddler. Antonia, Joanna, and the baby were watching television in the living room. Someone threw a brick through the window of the bedroom, almost hitting Francine's child. Immediately thereafter, J.L.H. and her companion, G., came into the trailer. Francine testified, "Well, nobody let them in the house. They opened the door themselves and they went straight for the [bed]room. And in the room, I followed them into the room and G. said to give her the money." The front door was closed but not locked. Francine did not give them permission to enter the house. "They just went in there to go get the money ... for Peanut's money." Both girls demanded the money. "They went in there to go get Peanut's gun." Francine had Peanut's gun, G. took it and gave it to J.L.H. G. also had another weapon of her own.
G. put it against my [Francine's] head and said to give her the money, and I said I couldn't give it to her because I didn't have it because I didn't know if Peanut wanted me to give it to her.
So after she did that, I just turned around and gave her the money. And then, well, G. said that next time she ask me for money, that I better give it to her.
Francine testified that this incident put her in fear for her life and her daughter's life.
Antonia Morrison testified that she was using the bathroom when she heard a car approaching with loud, "banging" music. She did not see who damaged her trailer with the brick. From the bathroom, she could hear her younger daughter arguing with someone. She tried to hurry so she could leave the bathroom when she heard this. She saw three girls entering the trailer, one of whom was J.L.H. Although Joanna was the one who met the girls at the front door, and Antonia did not know what exactly she told them, she believed they entered the door by force because "the thing was broken off." She testified, "I just saw my daughter and [J.L.H.] arguing overI don't know what was going on, what they wanted, or this and that, and I just saw the gun being held to her head, that's all." Antonia testified she saw J.L.H. holding the gun inches from Francine's head. Antonia did not give permission for the intruders to enter her house that day, nor to hold a gun to her daughter's head. Her testimony was that she told them they had "just better run or do what you have to do and just leave, you know, go, leave us alone. You know, why do you have to come and, you know, break our windows and whatever, because they did, they damaged the trailer and now I've got to pay for it." She had seen J.L.H. before. "She used to come by with this guy named Peanut." J.L.H. had caused no trouble in the past, but this incident had scared both Antonia and her daughter. She called the police, and the girls took off right away as soon as they got what they wanted.
The petition alleging delinquent conduct charged:
J.L.H., did then and there intentionally and knowingly enter a habitation without the effective consent of FRANCINE MORRISON, the owner thereof, and therein attempted to commit a felony to wit: Aggravated Assault with a deadly weapon to the said FRANCINE MORRISON, in violation of section 30.02 of the Texas Penal Code.

*248 Lack of consent to enter habitation
Urging legal and factual insufficiency of the evidence in two points for review, J.L.H. first contends that the State did not prove beyond a reasonable doubt that the juvenile lacked consent of the owner to enter the habitation. J.L.H. argues that this element fails because the complaining witness, Francine Morrison, was not the residence's "owner," nor the person who answered the door, nor did she know exactly what happened when J.L.H. and her companion came to the door. The juvenile contends that because the State did not call Joanna Morrison to testify, a presumption arose that she gave permission for J.L.H. to enter. We disagree.
The Texas Penal Code defines "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."[21] Although J.L.H. concedes that Francine had a greater right of possession to the trailer than did J.L.H., she nevertheless contends that Francine's testimony that she did not consent to J.L.H.'s entry is insufficient because there was no direct evidence on what occurred at the front door. We do not think such direct testimony was required.
Lack of an owner's consent may be proved by circumstantial evidence, just as may any other element of a criminal charge.[22] Here, Francine Morrison, a listed resident, testified she did not give J.L.H. consent to enter the trailer; that "nobody let them in the house"; they opened the door themselves and went straight for the [bed]room. Antonia Morrison, the trailer's lessee, testified she did not give J.L.H. consent to enter; she heard her younger daughter arguing with someone at the front door; when she emerged from the bathroom, three people had entered the house, including J.L.H.; and they had got in through the front door because "the thing was broken off." (The record does not explain what "thing" on the door was broken). Only seconds elapsed between the brick being thrown through the window and the argument between Joanna Morrison and the people at the front door. Neither witness directly observed whatever occurred at the front door, and Joanna Morrison did not testify.
Viewing this evidence in the light most favorable to the verdict, we find a reasonable fact finder could find beyond a reasonable doubt that J.L.H. had entered the habitation without consent of the owners. Both Francine and Antonia Morrison were owners within the Penal Code definition. We cannot say that the State's election not to call Joanna Morrison creates a presumption that she gave consent, as the juvenile argues. J.L.H.'s suggestion that Joanna was not called because she gave consent is mere speculation. Taking the evidence as a whole, we conclude the State met its burden of proof.
Similarly, viewing the evidence in a neutral light, we do not find that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. There is ample evidence from which a fact finder could conclude J.L.H. and her companion(s) forcibly entered the house. The evidence was both legally and factually sufficient on the element of lack of consent.

Intent to commit aggravated assault
J.L.H. next urges that the evidence is legally and factually insufficient to prove that J.L.H. entered the trailer with the intent to commit aggravated assault. In making this argument, J.L.H. appears *249 to rely upon Tex. Pen.Code Ann. 30.02(a)(1), which provides that a person commits an offense if, without the effective consent of the owner, the person "enters a habitation ... with intent to commit a felony, theft, or an assault."[23] The petition here, however, alleged delinquent conduct based upon Tex. Pen.Code Ann. 30.02(a)(3), which provides that a person commits an offense if, without the effective consent of the owner, the person "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault."[24] Under this section, the juvenile's intent at the time she entered the habitation is not the controlling element; rather, the State was required to prove beyond a reasonable doubt that she committed or attempted an assault after entering the habitation without consent.[25] The attempted assault alleged under section 30.02(a)(3) supplants the intent upon entry required under 30.02(a)(1).[26] Thus, this argument is without merit.
J.L.H. next argues that there was insufficient evidence from which the jury could conclude she attempted an aggravated assault, either as a principal or a party, urging that her mere presence was all the State could establish. To the contrary, we find there was ample evidence that J.L.H. attempted to commit aggravated assault, at least as a party.
It is true that mere presence at the scene of a crime is not sufficient to establish guilt, but it may be evidence of guilt when combined with other circumstances.[27] Moreover, circumstantial evidence may be sufficient to establish guilt as a party.[28] In reviewing the evidence establishing party status, this Court may examine the events occurring before, during, and after the commission of the offense.[29]
Here, viewing the evidence in the light most favorable to the verdict, there was evidence that immediately before J.L.H. and G. entered the trailer, a brick was thrown through the bedroom window. J.L.H. and G. entered the trailer without consent. Both G. and J.L.H. demanded that Francine give them Peanut's money. When Francine gave G. Peanut's gun, G. handed it to J.L.H., who took the gun and held it. In J.L.H.'s immediate presence, G. held a second gun to Francine's head. The two girls left together, taking the gun and money. Antonia testified that it was J.L.H., not G., who held the gun to Francine's head. A reasonable fact finder could find J.L.H. was a party to attempted aggravated assault based on this evidence.
Viewing the evidence in a neutral light, we must discount the testimony that J.L.H. was the one holding a gun to Francine's head. Nevertheless, even without that evidence, we cannot say that the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. J.L.H.'s two points for review are overruled.

Conclusion
We affirm the trial court's adjudication of delinquency.
NOTES
[1] U.S. Const. amend. XIV; Alvarado v. State, 912 S.W.2d 199, 206-207 (Tex.Crim.App. 1995) (citing In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368 (1970)).
[2] Tex. Fam.Code Ann. § 54.03(f) (Vernon Supp. 2001); In re M.M.R., 932 S.W.2d 112, 113 (Tex.App.-El Paso 1996, no pet.).
[3] Jackson v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
[4] In re A.S., 954 S.W.2d 855, 858 (Tex.App.-El Paso 1997, no pet.).
[5] Id.
[6] Id. at 860.
[7] Id.
[8] In re M.R., 858 S.W.2d 365, 366 (Tex.1993).
[9] In re D.T.C., 30 S.W.3d 43, 51 (Tex.App.-Houston [14th Dist.] 2000, no pet.).
[10] In re J.S.S., 20 S.W.3d 837, 841 (Tex. App.-El Paso 2000, pet. denied).
[11] Id.
[12] Id.; Hidalgo v. State, 983 S.W.2d 746, 751-52 (Tex.Crim.App.1999).
[13] Tex. Fam.Code Ann. § 51.01(1), (2)(A), and (4) (Vernon 1996).
[14] Lanes v. State, 767 S.W.2d 789, 791 (Tex. Crim.App.1989).
[15] In re J.S.S., 20 S.W.3d at 842; Hidalgo, 983 S.W.2d at 751.
[16] Clewis v. State, 922 S.W.2d 126, 136 (Tex. Crim.App.1996).
[17] Davila v. State, 930 S.W.2d 641, 647 (Tex. App.-El Paso 1996, pet. ref'd).
[18] Id. at 649.
[19] Id. at 647 (citations omitted).
[20] Tex. Fam.Code Ann. § 51.01(6) (Vernon 1996).
[21] Tex. Pen.Code Ann. § 1.07(a)(35)(A) (Vernon 1994).
[22] Prescott v. State, 610 S.W.2d 760, 763 (Tex. Crim.App.1981).
[23] Tex. Pen.Code Ann. § 30.02(a)(1) (Vernon Supp.2001).
[24] Tex. Pen.Code Ann. § 30.02(a)(3) (Vernon Supp.2001).
[25] DeVaughn v. State, 749 S.W.2d 62, 65 (Tex. Crim.App.1988).
[26] Id.
[27] Beardsley v. State, 738 S.W.2d 681, 685 (Tex.Crim.App.1987).
[28] Id. at 684.
[29] Id. at 685.