108 S.W.3d 368 (2003)
In the Matter of E.U.M.
No. 09-02-371 CV.
Court of Appeals of Texas, Beaumont.
Submitted April 18, 2003.
Decided April 24, 2003.
*369 Jimmy D. Hamm, Beaumont, for appellant.
Tom Maness, Crim. Dist. Atty., Wayln G. Thompson, Asst. Crim. Dist. Atty., Beaumont, for state.
Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

OPINION
STEVE McKEITHEN, Chief Justice.
A jury found that E.U.M., a juvenile, engaged in delinquent conduct by committing the offense of manslaughter, and assessed a determinate sentence of five years of confinement. The trial court entered a judgment and order of commitment to the Texas Youth Commission with a possible transfer to the Texas Department of Criminal Justice, Institutional Division. See Tex. Fam.Code Ann. §§ 53.045(a)(3), 54.04(d)(3) (Vernon 2002). In two collectively argued issues, E.U.M. contends that the evidence is legally and factually insufficient to support the jury's finding that she committed manslaughter.
We employ the criminal legal sufficiency standard of review to juvenile cases. Matter of G.A.T., 16 S.W.3d 818, 828 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). When evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Id. (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The jury found that E.U.M. recklessly caused the death of an individual, A.M.F., by pointing a firearm in the direction of A.M.F. and discharging the firearm. On appeal, E.U.M. confines her challenge to the proof of the applicable mental state. A person commits manslaughter if the person recklessly causes the death of an individual. Tex. Pen.Code Ann. § 19.04 (Vernon 2003). The culpable mental state for manslaughter, recklessness, is defined as follows:
A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his *370 conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
TEX. PEN.CODE ANN. § 6.03(c) (Vernon 2003).
Proof of a culpable mental state generally relies on circumstantial evidence. Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim.App.1978). Whether the accused is aware of a requisite risk or simply should be aware of it, is a conclusion to be drawn by the trier of fact through inference from all the evidence. Id. "The issue is not one of theoretical possibility, but one of whether, given all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk." Recklessness involves conscious risk creation, as opposed to the inattentive risk creation involved in criminal negligence. Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim.App.1975). The former requires conscious disregard of the risk created by the actor's conduct, while the latter arises when the actor fails to perceive the risk. Id. Conscious disregard of a substantial and unjustifiable risk has been found in a variety of situations involving discharging a firearm. For instance, in Mendez v. State, 575 S.W.2d 36, 38 (Tex.Crim.App. 1979), the defendant was one of three persons who, after drinking together, armed themselves and shot up two unoccupied cars before a co-defendant shot randomly at houses and killed an occupant. In Yates v. State, 624 S.W.2d 816, 817 (Tex.App.-Houston [14th Dist.] 1981, no pet.), the defendant admitted that he knew the gun was loaded and that he pointed the gun at the deceased in a "quick draw" contest, but claimed that he fired accidentally. In another accidental discharge case, Skeen v. State, 96 S.W.3d 567 (Tex.App.-Texarkana 2002, pet. stricken), the defendant took a loaded weapon and followed the victim after the victim threatened the defendant. Salinas v. State, 644 S.W.2d 744, 746 (Tex. Crim.App.1983), concerned the failure to charge a lesser included offense rather than sufficiency of the evidence to sustain the conviction. In its analysis, however, the court stated, "Here, we may presume that appellant was aware of the risk of injury or death by having a loaded, cocked pistol and exhibiting it, although at the time it discharged he was not specifically aware of shooting the deceased. Therefore, appellant having been aware of the risk, his conduct was reckless and a charge on involuntary manslaughter should have been given." Id. (footnote omitted).
Evidence of recklessness has been held to be insufficient where an intoxicated person inside his home discharged a revolver under unknown circumstances and the bullet struck and killed a person inside the neighboring abode. Keith v. State, 692 S.W.2d 921, 923 (Tex.App.-Houston [14th Dist.] 1985), pet. ref'd, 721 S.W.2d 294 (Tex.Crim.App.1986), overruled on other grounds by Ex parte Keith, 782 S.W.2d 861, 864 (Tex.Crim.App.1989). In this case, however, the circumstances surrounding the homicide were related to the jury.
The appellant's written statement, which the State introduced into evidence at trial, related the appellant's version of the facts. According to her statement, thirteen-year-old E.U.M. and her best friend, twelve-year-old A.M.F., were visiting an eighteen-year-old acquaintance named Brandon. E.U.M. watched Brandon load and unload a short-barreled shotgun several times. Brandon told E.U.M. that he *371 was going to go out to the country and shoot the gun. Brandon handed the shotgun to A.M.F., who played with the gun by making it click and pointing it at E.U.M. while Brandon went outside. A.M.F. handed the shotgun to E.U.M., who aimed it around while A.M.F. stood four or five feet away. In the appellant's words, "I forgot that Brandon loaded the gun. I was holding the gun about chest high and I pulled the trigger. The gun went off as [A.M.F.] was turning around. She grabbed her chest, under her breast."
Exactly what transpired is difficult to determine because the two girls were alone in the room at the time of the shooting. A person standing outside testified that she heard A.M.F. yell, "Stop playing" in a scared voice two or three times shortly before the gun fired. E.U.M. ran outside the apartment and screamed, "She shot herself." Another witness, who went to the apartment in response to the gunshot, testified that E.U.M. told her, "We were playing" and that someone threw the gun and it fired. At the scene, E.U.M. told Officer Lisa Beaulieu that A.M.F. encouraged her to hold the gun, then threw it to her, but that she did not catch the shotgun and it went off when it hit the floor. She then admitted that she had the gun and it accidentally went off. Then E.U.M. claimed that Brandon was waving the gun around, playing like a gangster, and it fired.
The weapon in question was a shotgun on which the barrel and the stock had been sawed off. The forensic pathologist who autopsied A.M.F. estimated that the end of the gun was about three feet away from the victim. The wound track ran from left to right, somewhat front to back, and slightly downward. The physical evidence is consistent with E.U.M.'s written statement, and inconsistent with her earlier accounts.
The weapon in question is a shotgun, not a small and unassuming pistol. E.U.M. knew that the gun was operational and that it was loaded. E.U.M. pointed the loaded sawed-off shotgun at another human being, while standing a scant three or four feet away. Her action created sufficient concern for A.M.F. to demand, loudly enough for someone to hear her outside, that E.U.M. stop playing. She then intentionally pulled the trigger while holding the weapon chest high and pointing directly at A.M.F. It defies reason to question that any person would not be cognizant of a substantial and unjustifiable risk of harm in such a situation. By all accounts, the appellant is an intelligent young woman who was an excellent student until truancy resulted in her expulsion from school. Her explanation for her action was that she "forgot" the gun was loaded. E.U.M. acted with guilty knowledge after the shooting when she tried to shift responsibility for the homicide to others.
From the clicking sound she heard when A.M.F. held the shotgun, E.U.M. may have thought that the shell was not in the chamber, but even if she believed the gun would not discharge when she pulled the trigger, E.U.M. still engaged in conscious risk creation. The other person in the room perceived the harm before the trigger was pulled. The jury could have rationally concluded that E.U.M.'s action in pointing a loaded shotgun at A.M.F. and pulling the trigger, for amusement only and without intent to kill, constituted a conscious disregard of a substantial and unjustifiable risk. Point of error one is overruled.
Point of error two contends the evidence is factually insufficient to sustain the conviction. E.U.M. did not preserve error by filing a motion for new trial, as required by the procedural rules applicable to civil cases. Tex.R. Civ. P. 324(b)(2); Tex.R.App. P. 33.1. The Supreme Court *372 has held that a motion for new trial is required to preserve error for a factual sufficiency review in juvenile cases because the Family Code provides that the rules of civil procedure govern except when in conflict with the Family Code. Matter of M.R., 858 S.W.2d 365, 366 (Tex.1993). The Family Code has since been amended, and at least one intermediate appellate court has held that a motion for new trial is no longer required to preserve error in juvenile cases. See Matter of J.L.H., 58 S.W.3d 242, 246 (Tex.App.-El Paso 2001, no pet.). At least one other intermediate appellate court reached the opposite conclusion and held a motion for new trial to be a procedural prerequisite. Matter of D.T.C., 30 S.W.3d 43, 51 (Tex.App.-Houston [14th Dist.] 2000, no pet.). The court deciding J.L.H. reasoned that Matter of M.R. was not binding precedent because it was decided before the Court of Criminal Appeals acknowledged factual sufficiency review in criminal cases. Matter of J.L.H., 58 S.W.3d at 246 (citing Clewis v. State, 922 S.W.2d 126, 136 (Tex.Crim.App. 1996)). In 1995, the Legislature amended the Family Code to provide that "Except for the burden of proof to be borne by the state in adjudicating a child to be delinquent or in need of supervision under Section 54.03(f) or otherwise when in conflict with a provision of this title, the Texas Rules of Civil Procedure govern proceedings under this title" but retained language that "The requirements governing an appeal are as in civil cases generally." Tex. Fam.Code Ann. §§ 51.17(a), 56.01(b) (Vernon 2002); see Act of May 31, 1995, 74th Leg., R.S., ch. 262, § 14, 1995 Tex. Gen. Laws 2517, 2524, 2546. A subsequent session of the legislature added language to Section 56.01 that expressly referred to motions for new trial. See Act of June 19, 1997, 75th Leg., R.S., ch. 1086, § 15, 1997 Tex. Gen. Laws 4179, 4186. The rule regarding motions for new trial in criminal cases is found in the rules of appellate procedure. See Tex.R.App. P. 21.[1] Because that rule does not require a motion for new trial as a prerequisite for appellate review, courts have held that one is not required for a factual sufficiency review in a criminal case. See Davila v. State, 930 S.W.2d 641, 647 (Tex.App.-El Paso 1996, pet. ref'd). In juvenile cases, the criminal standard for the burden of proof applies at trial, but the procedure for civil cases applies on appeal. Therefore, Texas Rule of Appellate Procedure does not apply, Texas Rule of Civil Procedure 324 does apply, and a motion for new trial is a prerequisite for challenging the factual sufficiency of the evidence at trial. E.U.M. did not file a motion for new trial.
Were the point of error preserved for appellate review, we would nonetheless find the evidence sufficient under the factual sufficiency standard of review for criminal cases. In reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.App.2000); Clewis v. State, 922 S.W.2d at 129. Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse *373 finding is against the great weight and preponderance of the available evidence. Johnson, 23 S.W.3d at 11. If a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof, we reverse and remand the cause to the trial court for a new trial. Id.
In this case, E.U.M. did not admit that she was actually aware that her actions created a substantial and unjustifiable risk of death. It appears that the girls were playing with the shotgun. The lack of threatening behavior weighs against a finding of intent to create risk of harm, but it also strips the appellant's actions of any possible justification for creating that risk. Weighing against a finding of conscious disregard is E.U.M.'s statement that she did not know anything about guns and that she "forgot" the gun was loaded. The jury could perceive E.U.M.'s professed forgetfulness as conscious disregard of mortal danger recalled in hindsight. The risk inherent in leveling a loaded shotgun three or four feet away from someone and pulling the trigger is so patent and extreme that the jury could easily infer the culpable mental state from the surrounding circumstances. Point of error two is overruled. The judgment is affirmed.
AFFIRMED.
NOTES
[1] The motion for new trial functions as a bridge of sorts between trial and appeal, as its granting will serve judicial economy by expediting the process in cases where reversible error occurred during the course of a trial, while its denial triggers the extended appellate timetable. Perhaps the distinct placement of the procedure for motions for new trial, in the trial rules for civil cases and in the appellate rules for criminal cases, reflects the frequency of its success in the two types of cases. If so, the legislature's decision to treat juvenile cases as civil appeals rather than criminal appeals appropriately emphasizes the role of the trial judge in the post-trial process.