COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )

                                                                              )            
No.  08-01-00485-CV

                                                                              )

                                                                              )                 Appeal from the

                                                                              )

IN THE MATTER OF T.S.H., A
Juvenile              )            
County Court at Law

                                                                              )

                                                                              )        
of Midland County, Texas

                                                                              )

                                                                              )                    (TC# 4798)

                                                                              )

 

MEMORANDUM  OPINION

 

Appellant T.S.H.
contests a disposition order committing him to the Texas Youth Commission for
an indeterminate period of time not to exceed his 21st birthday.  He raises three issues:  (1) the trial court erred by allowing the
inadmissible testimony; (2) the evidence was factually insufficient to support
the disposition order; and (3) the in-court identifications were 

tainted.  We affirm the order of the trial court.








In the evening of
April 12, 2001, two sisters, Dana Edwards and Alicia Romero, were about to walk
into a grocery store in Midland, Texas when a stranger stole Dana=s wallet.  In November 2001, Dana and Alicia both
testified at Appellant=s
delinquency trial and identified him as the person who stole Dana=s wallet.  Dana described the thief as a white male
about six feet tall with a thin build. 
He wore a ball cap, light blue shirt, and long shorts.  She identified T.S.H, as the snatcher.  Alicia described the thief as thin and about
six feet tall with blue-green eyes.  She
stated that he was wearing a light blue long-sleeve shirt, blue jeans, and a
ball cap. 

Dana also
testified that the prosecuting attorney had interviewed her a day or so before
the trial and showed her a color photograph of T.S.H. wearing orange
coveralls.  She was only shown T.S.H.=s photograph and she testified that she
was able to almost immediately identify the photographed person as the person
who had stolen her wallet.  The only
difference, she stated, was that he had much shorter hair in the photograph
than he did on April 12, 2001. 

The Appellant
called two witnesses:  Ashley Waddell and
her husband, Chris Rangel.  They
testified that T.S.H. was a regular visitor at their home and both testified
that he was at their apartment on the evening of April 12, 2001.  They also testified about his appearance that
night and specifically that T.S.H. had very close cropped hair and he was
missing his two front teeth.  Chris
conceded on cross-examination that he had no specific, independent recollection
of T.S.H. being at his apartment that particular evening.  Ashley, on the other hand, was quite
confident that he had been there on that evening.  She stated that she remembered that date
specifically because her husband was paid on the second and third Thursday, and
April 12 was the second Thursday in April. 
However, on cross-examination, 
Ashley confidently stated that T.S.H. was also at her apartment on the
third Thursday in April as well--April 19, 2001.  The State subsequently put on rebuttal
testimony of a probation officer that stated T.S.H. was in the Culver Juvenile
Detention Center on April 19, 2001.

                                                              Standards
of Review








Consistent with
due process requirements, no person may be convicted of a criminal offense and
denied his or her liberty unless criminal responsibility for the offense is
proved beyond a reasonable doubt.  U.S.
CONST. amend. XIV; Alvarado v. State, 912 S.W.2d 199, 206‑07
(Tex.Crim.App. 1995), citing In re Winship, 397 U.S. 358, 364, 90 S.Ct.
1068, 1072‑73, 25 L.Ed.2d 368 (1970). 
This due process requirement applies to suits alleging a juvenile has
engaged in delinquent conduct.  Tex.Fam.Code Ann. ' 54.03(f)(Vernon 2002); In re M.M.R.,
932 S.W.2d 112, 113 (Tex.App.‑‑El Paso 1996, no pet.).

A trial court=s ruling on the admissibility of
evidence is reviewed by the appellate courts under an abuse of discretion
standard of review.  See Weatherred v.
State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000), citing Prystash
v. State, 3 S.W.3d 522, 527 (Tex.Crim.App. 1999).  An abuse of discretion occurs when a trial
court=s
decision is so clearly wrong as to lie outside that zone within which
reasonable persons might disagree and when the trial court=s acts are arbitrary and unreasonable
without reference to any guiding rules or principles.  See Montgomery v. State, 810 S.W.2d
372, 380, 391 (Tex.Crim.App. 1991)(Opin. on reh=g).

In reviewing the
factual sufficiency of evidence supporting a finding that a juvenile committed
an offense which constitutes delinquent conduct, we review all the evidence in
determining whether the State met its burden of proof beyond a reasonable
doubt, but not in the light most favorable to the verdict.  In re J.L.H., 58 S.W.3d 242, 245
(Tex.App.‑-El Paso 2001, no pet.). 
Only if the verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust will we conclude that there is
factually insufficient evidence.  Id.  








In his first
issue, T.S.H. raises a three-part complaint about the admission, over his
objection, of the rebuttal testimony of David Mills, a juvenile probation
officer.  First, he contends that the
testimony that T.S.H. was in the Culver Juvenile Detention Center on
April 19  was not relevant.  That is, the fact that T.S.H. was in the
Culver center on April 19 was not relevant to his alibi defense that he was at
Ashley Waddell=s
apartment on the evening of April 12.

Relevant evidence
refers to evidence having any tendency to make the existence of any fact that
is of consequence to the determination of the action more probable or less
probable than it would without the evidence. 
Tex.R.Evid. 401.  The evidence need not prove or disprove a
particular fact; the evidence is sufficiently relevant if it provides a small
nudge toward proving or disproving any fact of consequence.  See Montgomery, 810 S.W.2d at
376; Henderson v. State, 906 S.W.2d 589, 594 (Tex.App.‑‑El
Paso 1995, pet. ref=d).  Evidence of credibility, whether used to
impeach, support or rehabilitate a witness, is always relevant.  See Castillo v. State, 939 S.W.2d 754,
758 (Tex.App.‑-Houston [14th Dist.] 1997, pet. ref=d),
citing Hooper v. State, 494 S.W.2d 846, 848 n.1 (Tex.Crim.App.
1973).

Ms. Waddell=s testimony was not only that T.S.H.
was in her apartment on April 12, but 
that she was Agood
with dates@ and
specifically remembered T.S.H. being at her apartment on the second and third
Thursday of April when her husband brought his paycheck home.  The rebuttal testimony of Mr. Mills was
properly admitted to show that Ms. Waddell was not completely creditable and
that her vigorous testimony that T.S.H. was at her apartment from 4:30 p.m.
until after her husband had come home from work at near midnight on April 12,
was less worthy of belief.  Her
credibility was clearly relevant.  








T.S.H.=s next two arguments are effectively
the same and we consider them together. 
They are that the objected-to evidence should have been excluded under
Rules 403 and 404(b) because it was more prejudicial than probative and it was
evidence of an extraneous offense.  He
contends that the State should only have been allowed to have witness Mr. Mills
testify that T.S.H. was not at Ashley Waddell=s
apartment on April 19 and that by eliciting the fact that T.S.H. was, in fact,
at the Culver Juvenile Detention Center was more prejudicial than
probative.  We find no merit to these
complaints.  First, the record before us
clearly shows that the trial judge did engage in the necessary balancing test
and clearly made a judgment based upon the Arelevant
criteria@ by which
a Rule 403 decision is to be made.  See
Flores v. State, 840 S.W.2d 753, 756 (Tex.App.‑-El Paso 1992, no
pet.).  Indeed, the trial judge
instructed the State not to make any inquiry into why T.S.H. was at the center
on that date.  Under Rule 403, the trial
court may, in its discretion, only exclude evidence when the probative value is
substantially outweighed by the unfair prejudice.  See Tex.R.Evid.
403.  We find the testimony that T.S.H.
was at the Culver Center on April 19 had minimal, if any, potential for unfair
prejudice that would improperly affect the jury, and certainly did not outweigh
the probative value of the evidence presented by Mr. Mills.  

With respect to
Rule 404(b) extraneous offense objection, the trial court carefully instructed
the State to limit its questions to ensure that no direct evidence of an
extraneous offense was heard by the jury. 
The trial court clearly exercised his discretion and balanced the
probative value of the testimony against its tendency to prove character.  As we have stated above, the evidence was
relevant and we cannot say that the trial court abused its discretion in admitting
the evidence.  Issue One is overruled.








We now turn to
T.S.H.=s
complaint that the evidence is factually insufficient.  He argues first that there were serious
inconsistencies in the description provided by Dana and her sister that
conflicted with other descriptions, in particular, his hairstyle and lack of
front teeth that negate their direct identification of the thief.  Then, he points to the unrefuted alibi
testimony of Ashley Waddell and Chris Rangel that T.S.H. was with them on the
night of the offense.

Viewing the
evidence in a neutral light, we cannot find that the verdict is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust.  There is ample evidence from which a fact
finder could conclude that T.S.H. was the person who stole Dana=s wallet, notwithstanding contrary
alibi testimony.  Looking first at the
victim=s and her
sister=s
identification testimony, we find only narrow inconsistencies.  Both women testified that T.S.H. came up to
them just before they were about to enter an Albertson=s
grocery store, and twice asked for a cigarette before snatching the victim=s wallet and running away.  Both sisters had ample opportunity to
observe, face-to-face, the offender at the time of the offense in order to make
a reliable identification of the offender. 
The time period between the event and the courtroom identification was
relatively short, seven months.  The
jury, in evaluating and assessing the credibility of the identification
testimony of sisters, had adequate basis to do so.  We note that the deficiencies and
inconsistencies that T.S.H. points to were pointed out to the jury through his
attorney=s able
cross-examination.  








The alibi
testimony of Ashley Waddell and her husband, Chris Rangel, does not directly
and explicitly contradict the testimony of Dana Edwards and Alicia Romero.  Chris Rangel testified that T.S.H. was a
frequent visitor and he recalled coming home on Thursday, April 12,  and finding T.S.H. sitting with his wife and
stepson watching movies.  He stated that
he would get home between 11 p.m. and 1 a.m. 
He testified that he did not know how much longer T.S.H. stayed in the
apartment because he Apretty
much went to bed after a long day=s
work@ at
almost 1 a.m. and T.S.H was still there. 
He admitted on cross-examination that he did not have a specific
recollection of T.S.H. being at his apartment on April 12.

Ashley Waddell
testified that from March to May, T.S.H. was a daily visitor Awhen he is not in Culver.@ 
She maintained that she was good with dates and connected T.S.H.=s visit on April 12 to the fact
that her husband was paid that day.  She
said that T.S.H. was with her in the apartment from about 4:30 p.m. A[u]ntil about the time my husband got
home, which is about 11:30 in the evening.@  Then she said that she gave him a ride to the
house of a friend named Tony, whose full name, the State suggested, was Tony
Diaz.  In the State=s Exhibit 1 is a social report that
states that an AAnthony
Diaz@ was with
T.S.H. when the theft occurred. 

Looking at all of
the evidence, T.S.H.=s
alibi evidence is simply not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
On the side of the jury=s
verdict is the courtroom identification of T.S.H. by the victim and her sister
as the person who snatched the wallet. 
This is contradicted by the testimony of a young couple that T.S.H. was
a regular evening guest on the weekdays who was with them that evening.  However, the inconsistency of these two
competing sets of evidence are, upon close inspection, not as direct or
explicitly contradictory as argued.  In
particular, Ashley Waddell=s
testimony, even from a cold record, appears to contain a good degree of
puffing.  The significant details and
dates she provided were shown to be inconsistent and inaccurate.  Also, a close reading of her testimony seems
to indicate that she may have driven T.S.H. to his friend Tony=s house before rather than after her
husband came home from work, which was normally between 11 p.m. and 1 a.m.  That creates a window of time for T.S.H. to
steal the wallet at 10:30 p.m.  We find
that it was quite reasonable for the jury to conclude beyond a reasonable doubt
that T.S.H. was guilty of theft.  Issue
Two is overruled.








In his final
issue, T.S.H. complains that the presentation of a single photograph of T.S.H.
to the victim, Dana Edwards, two days before the trial impermissibly tainted
her courtroom identification of T.S.H. 

A single
photograph Alineup@ is improperly suggestive and viewed
with suspicion.  See Manson v.
Brathwaite, 432 U.S. 98, 104, 97 S.Ct. 2243, 2247-48, 53 L.Ed.2d 140
(1977); Delk v. State, 855 S.W.2d 700, 706 (Tex.Crim.App. 1993), cert.
denied, 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993).  A suggestive identification scenario, such as
a single photograph lineup, is disapproved because the suggestive lineup
increases the likelihood of misidentification.  Neil v. Biggers, 409 U.S. 188, 198, 93
S.Ct. 375, 381‑82, 34 L.Ed.2d 401 (1972). 
The State concedes in its brief that the showing of the single
photograph was suggestive. 

A two‑step
analysis is used to determine the admissibility of an in‑court
identification. Delk, 855 S.W.2d at 706. 
First, the photographic display cannot be impermissibly suggestive.  Id. 
Second, based on the totality of the circumstances, the suggestive
display cannot give rise to a Asubstantial
likelihood of irreparable misidentification.@  Id. 
However, the United States Supreme Court has stated that a conviction Abased on eyewitness identification at
trial following a pretrial identification by photograph will be set aside on
that ground only if the photographic identification procedure was so
impermissibly suggestive as to give rise to a very substantial likelihood of
irreparable misidentification.@  Simmons v. United States, 390 U.S.
377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).  The key is whether under the Atotality of the circumstances@ the identification was reliable even
though the confrontation procedure was suggestive.  See Neil v. Biggers, 409 U.S. at 199, 93
S.Ct. at 382.

 








Five factors are
considered to judge the likelihood of misidentification:  (1) the opportunity of the witness to view
the criminal at the time of the crime; (2) the witness=
degree of attention; (3) the accuracy of the witness=
prior description of the criminal; (4) the level of certainty demonstrated by
the witness at the confrontation; and (5) the length of time between the crime
and the confrontation.  Neil v. Biggers,
409 U.S. at 199, 93 S.Ct. at 382; see also Manson v. Brathwaite, 432
U.S. at 114-15, 97 S.Ct. at 2253; Johnigan v. State, 69 S.W.3d 749, 752
(Tex.App.-‑Tyler 2002, pet. ref=d).  We consider the five Biggers factors
deferentially in a light favorable to the trial court=s
ruling.  Loserth v. State, 963
S.W.2d 770, 773‑74 (Tex.Crim.App. 1998). 
The factors, viewed in this light, are then weighed de novo
against Athe
corrupting effect@ of the
suggestive pretrial identification procedure. 
Id.

In this case, the
victim had ample opportunity to view T.S.H. during the face-to-face
confrontation she had with him.  It took
place just outside the main entrance to an Albertson=s
grocery store.  The confrontation began
with T.S.H. asking Dana Edwards if she had a cigarrette and rashly repeating
the request after she said no to his first request.  We find these facts satisfy the first two
considerations listed in Neil. 

There is nothing
in the record about the third factor, the accuracy of the victim=s prior description of T.S.H.  She testified that she was certain of her
identification when she was shown the photograph.  Finally, the length of time between the crime
and the identification was about seven months. 
Taken together, under the Atotality
of the circumstances,@
we find the trial court did not err in admitting the in‑court
identification of Appellant by the informant. 
Her testimony shows that her in‑court identification of T.S.H. was
not impermissibly influenced by the photograph shown to her days before the
trial of Appellant.  We overrule Issue
Three.








The judgment of
the trial court is affirmed. 

 

 

 

August
28, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.