IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00234-CR

 

John Fitzgerald Hawkins,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 163rd District Court

Orange County, Texas

Trial Court No. B-030731-R

 



MEMORANDUM  Opinion










 

      Hawkins appeals his conviction for
aggravated robbery.  See Tex.
Penal Code Ann. § 29.03(a) (Vernon 2003).  We affirm.

      In Hawkins’s one issue, he contends that
the trial court erred in overruling Hawkins’s objection to a video recording of
the robbery.  Hawkins argues: 

      The
videotape showed a four-pane view of the store, presumably taken from four
different cameras.  During the middle of the tape, the camera showing the cash
register and counter area was isolated and only the view from that camera was
shown.  The tape then showed the robbery again from a four-pane view.

Hawkins contends that the video recording “was
not properly authenticated, i.e., there were alterations or enhancements that
were not explained.”

      “The requirement of authentication or
identification as a condition precedent to admissibility is satisfied by
evidence sufficient to support a finding that the matter in question is what
its proponent claims.”  Tex. R. Evid.
901(a).  “The admissibility of evidence is within the discretion of the trial
court and will not be overturned absent an abuse of discretion.”  Sorto v.
State, 173 S.W.3d 469, 491 (Tex. Crim. App. 2005); accord Montgomery v. State, 810 S.W.2d 372, 390-93 (Tex. Crim. App. 1991) (op. on reh’g). 
“The trial court abuses its discretion when the decision lies outside the zone
of reasonable disagreement.”  Apolinar v. State, 155 S.W.3d 184, 186
(Tex. Crim. App. 2005); accord Montgomery at 391. An “example[] of
authentication or identification conforming with the requirements of” Rule 901
is the “[t]estimony of [a] witness with knowledge,” that is, “[t]estimony that
a matter is what it is claimed to be.”  See Tex. R. Evid. 901(b).  “Regarding photographs or motion
pictures,” Rule 901 “allows for authentication to be accomplished by the
testimony of any witness who has personal knowledge that the particular item
accurately represents the scene or event it purports to portray.”  Kephart
v. State, 875 S.W.2d 319, 321 (Tex. Crim. App. 1994) (interpreting Tex. R. Crim. Evid. 901, 49 Tex. B.J. 220, 232 (Tex. Crim. App.
1986) (repealed 1997) (current version at Tex.
R. Evid. 901)), overruled on other grounds, Angleton v. State, 971
S.W.2d 65, 69 (Tex. Crim. App. 1998); accord Huffman v. State, 746
S.W.2d 212, 222 (Tex. Crim. App. 1988); see also Webb v. State, 760 S.W.2d
263, 276 (Tex. Crim. App. 1988) (no abuse of discretion in admitting extract of
relevant channels from multitrack audio recording).

      The sheriff’s deputy who responded to the
robbery testified that in the course of his investigation of the convenience-store
robbery he collected and secured the video tape from the store’s video
surveillance system.  The victim, a clerk, testified that the store was
equipped with such a system and that it was working on the day of the robbery,
and confirmed that the deputy retrieved the tape from the system.  The victim
testified that she had watched the recording, and that the tape “fairly and
accurately represent[ed] the events as they took place on” the date of the
robbery.  Hawkins objected to the chain of custody, and further objected:

[I]t’s
my understanding that in order to introduce a video tape into evidence that
there must be testimony from someone who is familiar with the camera.  They
must give us the type of camera that was used, whether or not they were familiar
personally with the working of the camera, specifically the working of the
camera on the day in particular or the time when the camera is being used.

Hawkins also complained that “there was no
testimony of whether she was familiar with . . . where [the camera]
was positioned, how did she know that it was working that day, other than
seeing the tape after the fact, and I think it requires more specific testimony
about the technical proficiency of the camera . . . .”  The
trial court overruled Hawkins’s objections and admitted the tape.  Later, on
cross-examination by Hawkins, another sheriff’s deputy who investigated the
robbery twice testified that he did not remember whether the video image had
been in one pane or four when he watched the recording.  He also testified that
the recording had been sent to an officer of the Beaumont Police Department “to
be worked on” or “done something to.”  The deputy testified: “The way I
understand, the video equipment that he has, what it does is it slows down.  It
doesn’t create anything.  It just slows down the—where the quality can be a
better video.”  Hawkins renewed his objection:  

[W]ith
the testimony that we’ve heard that it was possibly tampered with, and I don’t
mean in any illegal manner, but tampered with or worked on by someone other
than what we’ve heard, I don’t think we can tell if that was the original video
or not.   As a result, I . . . ask that the Court instruct the jury
that the video cannot be considered as evidence in this case because of the
providence of it, not knowing what was done to it, how it was altered, if it
was altered, all of those kinds of things.

The trial court overruled the objection.

      The trial court did not abuse its
discretion in overruling Hawkins’s objections.  The victim, an eyewitness,
testified that the recording accurately represented the robbery.  We overrule
Hawkins’s issue.

      Having overruled Hawkins’s
sole issue, we affirm.  

 

TOM GRAY

Chief
Justice

Before Chief Justice Gray,

      Justice Vance, and

      Justice
Reyna

Affirmed

Opinion
delivered and filed February 8, 2006

Do
not publish

[CRPM]






n style='mso-spacerun:yes'>  As Garcia started to release
D.C.S, the child attempted to dart back into the classroom.  Garcia held D.C.S. who began to
struggle.  One teacher who witnessed the
actions in the hall stated that the force D.C.S. applied to his struggles
caused both he and Garcia to fall. 
Garcia hit his head on the lockers and sustained a gash on the side of
his head.

In his first issue, D.C.S. argues that the trial
court erred in failing to instruct the jury regarding the Texas Administrative
Code provisions on the use of restraints on students.  The Administrative Code provides that a
restraint may be used in an emergency.  Tex. Admin. Code tit. 19, §
89.1053(c).  An emergency is defined by
the Code as a situation where a student’s behavior poses a threat of imminent,
serious physical harm to the student or others or imminent, serious property
destruction.  Id. (b). 
D.C.S. requested an instruction on those provisions.  The juvenile court denied the requested
instruction.

The State argues that D.C.S.’s requested jury
instruction was nothing more than a non-statutory defense and served only to
negate elements of the State’s case. 
Such instruction is not required. 
Moore v.
State, No. 10-02-00076-CR, 2004
Tex. App. LEXIS 6612, *58 (Tex. App.—Waco July 21, 2004, no pet.)(Gray, C.J., concurring and
dissenting).  D.C.S. argues that Moore is inapplicable because it is a criminal case,
and, citing A.A.B., the rules of
civil procedure govern jury charges in juvenile proceedings.  In the
Matter of A.A.B., 110 S.W.3d 553, 558 (Tex. App.—Waco 2003, no pet.).  The only issue in A.A.B. that is applicable in this case was whether the civil or
criminal rules applied to the preservation
of jury charge error in juvenile cases. 
Any indication that the case stands for more than the preservation of
jury charge error is dicta.  As it was,
the court in A.A.B. assumed without
deciding there was error in the jury charge.

The question we address in this case is whether
the court erred in refusing the requested jury charge.  Although D.C.S. argues otherwise, the holding
in A.A.B. did not encompass a review
of whether there was error in the jury charge. 
D.C.S. was charged with a criminal offense.  It is within this context that the
instruction was requested.  It is within
this context that we review whether the juvenile court erred in refusing the
requested instruction.  Evaluating the
substance of a criminal jury charge under the body of law to review a civil
jury charge does not work.

We agree with the State.  D.C.S.’s requested instruction was a
defensive instruction and was not required. 
Moore, at *58; see also Hall v. State, No. 10-02-00156-CR, 2004 Tex. App. Lexis 944, *10-11
(Tex. App.—Waco Jan. 28, 2004, pet. granted)(lesser included instruction not
required because a violation of TDCJ policy would not mean officer was not
performing an official duty as a public servant).  Thus, the trial court did not err in refusing
the instruction.  Issue one is overruled.

In his second and third issues, D.C.S. contends
the evidence was both legally and factually insufficient to support the jury’s
verdict of “true.”

We apply the Jackson standard for testing the legal sufficiency of
the evidence in juvenile cases: that is, "whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); R.X.F. v. State, 921 S.W.2d 888, 889
(Tex. App.—Waco 1996, no pet.).  D.C.S.
raised this issue in a motion for instructed verdict.

D.C.S. generally contends the evidence was
legally insufficient to support the jury’s verdict even in the light most
favorable to the prosecution.  Viewing
the evidence under the appropriate standard, the evidence is legally sufficient
to support the jury’s verdict of “true.” 
Issue two is overruled.

Factual insufficiency issues on appeal in civil
cases must be raised by a motion for new trial. 
Tex. R. Civ. P.
324(b).  Juvenile proceedings are not
exempt from this requirement.  In the Matter of M.R., 858 S.W.2d 365,
366 (Tex. 1993); see In the Matter of
J.A.A., No. 10-03-012-CV, 2003 Tex. App. LEXIS 10880, *2-3 (Tex. App.—Waco
Dec. 31, 2003, no pet.)(memo op.).  Contra In re J.L.H., 58 S.W.3d 242, 246 (Tex. App.—El Paso 2001, no pet.).

D.C.S. failed to file a motion for new trial;
thus, his complaint is not preserved for our review.  He asks us to reconsider our position on this
issue; however, his arguments do not persuade us to hold otherwise, especially
when the Texas Supreme Court has already spoken on the issue.  See
In the Matter of M.R., 858 S.W.2d 365
(Tex. 1993). 
Issue three is overruled.

In his fourth issue, D.C.S. complains that the
trial court erred when it overruled his Batson/Edmonson[1]
motion relating to the State’s use of peremptory strikes against two minority
veniremen, Mable and Richards.  The same
three step process is used in resolving a Batson/Edmonson claim in civil trials; however,
we review civil trial claims under an abuse of discretion standard rather than
the “clearly erroneous” standard used in criminal cases.  Goode
v. Shoukfeh, 943 S.W.2d 441, 445-446 (Tex. 1997).

Because the trial court asked for, and the State
provided, race-neutral explanations for the strikes against the veniremen, the
preliminary issue of whether D.C.S. established a prima facie case of
discriminatory use is moot.  Id. at 445.  

The State offered five reasons to strike
Mable.  Those reasons are 1) she had a
bad experience with the school system; 2) she disagreed with the use of
corporal punishment; 3) she had no high school diploma; 4) she had a lower
income; and 5) she had a 14-year old son and could identify with the mother of
the juvenile.  Each of these reasons is
facially race-neutral.  On appeal, D.C.S.
raised no complaint with the reasons given by the State for striking
Mable.  D.C.S. still has the burden to
prove purposeful racial discrimination, and he has not done so as to
Mable.  Id. at 446. 
The trial court did not abuse its discretion in accepting any of these
reasons as race-neutral reasons to strike Mable.

The State struck Richards because 1) he did not
have eye contact, he kept his head down throughout the voir dire; 2) he did not
believe in corporal punishment; 3) he stated that whether a teacher could
properly touch a student depended on the circumstances; 4) he was very young;
and 5) he wore a very large cross on the outside of his clothing.  Each of these reasons is race-neutral on its
face.  On appeal, D.C.S. argued that a
white juror, Stanislaw 1) was equally, if not more inattentive than Richards;
2) also stated that it would depend on the circumstances whether a teacher
could put his hands on a student; and 3) was just as young as Richards.  We need only determine whether the trial
court abused its discretion in accepting one race-neutral reason for striking
Richards.  R.X.F. v. State, 921 S.W.2d 888, 898 (Tex. App.—Waco 1996, no
pet.).

The record reflects that Richards was 19 years
old.  Stanislaw was 22 years old.  The State noted that there was another juror
who was twenty years old and would have been struck but was not within the
strike zone.  The trial court did not
abuse its discretion in accepting age as a race neutral reason for striking
Richards.  Issue four is overruled.

Having overruled each issue properly presented,
we affirm the juvenile court’s order of adjudication.

 

                                                                   TOM
GRAY

                                                                   Chief
Justice

 

Before
Chief Justice Gray,

          Justice Vance, and

          Justice Reyna

Affirmed

Opinion
delivered and filed October 27, 2004

[CV06]











   [1]
 Batson
v. Kentucky,
476 U.S. 79,
106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Edmonson
v. Leesville Concrete Co., 500 U.S.
614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).