**In the Matter of D.J.H.**

No. 2–05–039–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 12, 2006.

Rehearing Overruled Feb. 2, 2006.

Jeff L. Pierce, Plano, for appellant.

Bruce Isaacks, Crim. Dist. Atty., Charles E. Orbison, John R. Moore, Greg Davis and Michael Dickens, Asst. Crim. Dist. Attys., Denton, for appellee.

PANEL F: CAYCE, C.J.; GARDNER and WALKER, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

D.J.H. appeals the trial court's adjudication order declaring that he engaged in the delinquent conduct of criminal trespass. In two points, appellant challenges the legal and factual sufficiency of the evidence to support the jury's finding that he engaged in delinquent conduct. We affirm.

■ The State's petition alleged that, on or about January 5, 2004, appellant "did then and there intentionally or knowingly enter a habitation, of another namely, James Spielmaker, without the consent of the said James Spielmaker, and [appellant] ... had notice that the entry was forbidden."[1] In his first point, appellant contends the evidence is legally insufficient to show beyond a reasonable doubt[2] that he (1) lacked Spielmaker's effective consent to be in the residence or (2) had notice that entry was forbidden. Appellant asserts that Spielmaker did not tell him to leave and that appellant was simply in the process of "wrapping things up" before leaving because he was attempting to retrieve his CDs from the living room coffee table.

In reviewing the legal sufficiency of the evidence to support an adjudication of delinquency, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the delinquent conduct beyond a reasonable doubt.[3] When performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.[4] We must resolve any inconsistencies in the evidence in favor of the verdict.[5]

"Notice" under the criminal trespass statute includes oral communication by the owner or someone with apparent authority to act for the owner.[6] "Consent" means assent in fact, whether express or apparent.[7] "Effective consent" includes consent by a person legally authorized to act for the owner.[8]

The evidence in this case shows as follows: Spielmaker owned the home where the alleged criminal trespass occurred, and he resided there with his girlfriend of six or seven years, Sherrie Curry, and Curry's two minor children, Lane and Kelsey. A well-understood rule in Curry–Spielmaker residence was that when it became dark and the streetlight came on, the Curry children had to wrap up their play and all other children had to leave the residence. Sherrie Curry testified that she had told appellant "numerous times" about the "streetlight rule" and had also informed him that he was not to come into the home unless he was invited. Spielmaker also

---

1. See TEX. PENAL CODE ANN. § 30.05(a)(1) (Vernon Supp.2005).

2. The beyond a reasonable doubt burden of proof applies in the adjudication phase of a juvenile case. *In re J.D.P.*, 85 S.W.3d 420, 422 (Tex.App.-Fort Worth 2002, no pet.).

3. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim.App.2005); *J.D.P.*, 85 S.W.3d at 422.

4. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim.App.1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

5. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim.App.2000).

6. TEX. PENAL CODE ANN. § 30.05(b)(2)(A) (Vernon Supp.2005).

7. *Id.* § 1.07(a)(11).

8. *Id.* § 1.07(a)(19).

testified that, due to prior problems with appellant coming onto his property uninvited, he had personally informed both appellant and his parents more than once before January 5 that appellant was not to come into the house uninvited.

On January 5, 2004, when the streetlight came on, the Curry children told appellant that he had to leave, and he left via the front door. Spielmaker testified that the children had authority to provide such notice to their friends and that on January 5 he observed both the children telling appellant to leave and appellant's departure. Spielmaker heard the front door close when appellant left.

After appellant left, Spielmaker and a friend, Dale McCarthy, talked in the kitchen for about twenty minutes. Spielmaker and McCarthy then walked from the kitchen into the living room, where they saw appellant "going through the stuff on the coffee table." Spielmaker did not know that appellant had returned to the residence.

Spielmaker testified that he'd had problems with appellant before and "freaked out" and asked him, "What are you doing in my house?" Appellant was startled, had a look on his face like "I just got caught," and ran out the front door. Neither Spielmaker nor the children had given appellant permission to re-enter the house. Kelsey testified that she saw him come back in the front door and begin "going through stuff on our coffee table" just before Spielmaker and McCarthy entered the living room. She confirmed that ap-

pellant "jumped up in a weird motion" and looked surprised when Spielmaker saw him. Kelsey further testified that Spielmaker yelled at appellant "[f]or coming into the house without asking or knocking."

Spielmaker sent Lane to appellant's home across the street to find out what was going on. Lane returned with appellant, and Spielmaker again asked appellant what he was doing in Spielmaker's house. When appellant did not respond to Spielmaker's questioning,[9] Spielmaker slapped him. That same evening, appellant's mother filed an assault charge against Spielmaker. Spielmaker did not report the trespassing incident until after he learned of the assault charge.[10]

■ Viewed in the light most favorable to the jury's verdict, this evidence is legally sufficient to establish beyond a reasonable doubt that appellant did not have Spielmaker's effective consent, whether express or apparent, to re-enter Spielmaker's residence after leaving it for the night.[11] After appellant left the home, neither Spielmaker or the Curry children invited him back inside. Instead, Kelsey saw appellant let himself back in through the front door which was closed when appellant left, and Spielmaker did not even know appellant was there until he saw appellant in the living room.

■ Likewise, the evidence is legally sufficient to establish that appellant had notice that he lacked Spielmaker's effec-

---

9. Lane testified that appellant had returned to the home to get some CDs he had left behind, but that he came back inside uninvited. Kelsey confirmed this. Lane further testified that appellant said, "Jim, wait," when Spielmaker made appellant leave; but both Lane and Kelsey testified that appellant did not tell Spielmaker that he had come back for his

CDs. Appellant's mother testified that the CDs were later left on her doorstep.

10. Spielmaker testified that he had pleaded guilty in municipal court to the assault charge and paid a $280 fine.

11. *See* TEX. PENAL CODE ANN. § 1.07(11), (19).

tive consent to re-enter the residence.[12] Although Spielmaker did not personally tell appellant to leave on January 5, the Curry children, who had been authorized and were expected to enforce the "streetlight rule," told appellant, in Spielmaker's presence, that appellant had to go home. Further, appellant had been informed by Sherrie Curry of the "streetlight rule" on numerous occasions, and Spielmaker had told both appellant and his parents more than once that appellant was not to enter the Curry–Spielmaker home uninvited.

We hold that this evidence is legally sufficient to establish the lack of effective consent and notice elements of criminal trespass beyond a reasonable doubt.[13] Accordingly, we overrule appellant's first point.

In his second point, appellant challenges the factual sufficiency of the evidence. He did not, however, raise this issue in his motion for new trial. This court has held in an en banc opinion that "as a prerequisite to raising a factual sufficiency challenge on appeal from a juvenile adjudication hearing, an appellant must first file a motion for new trial challenging the factual sufficiency of the evidence."[14] In reaching this result we relied on *In re M.R.*, in which the Supreme Court of Texas held that a motion for new trial is a prerequisite to asserting a factual sufficiency complaint in an appeal from a delinquency judgment.[15] Accordingly, the doctrine of stare decisis demands that we hold

that appellant's factual insufficiency complaint is waived.[16] Therefore, we overrule appellant's second point.

Having overruled both of appellant's points, we affirm the trial court's adjudication order.

GARDNER, J. dissents without opinion to the majority's holding that the evidence is legally sufficient to support the jury's trespass finding.

WALKER, J., filed a concurring and dissenting opinion.

WALKER, J., concurring and dissenting.

While I concur with the majority's holding that, applying the appropriate standard of review, the evidence is legally sufficient to support D.J.H.'s delinquency adjudication, I dissent from the majority's holding that D.J.H. failed to preserve his factual sufficiency challenge. For the reasons set forth by Justice Dauphinot in her dissenting opinion in *In re J.B.M.*, which I joined, I would hold that D.J.H.'s failure to file a motion for new trial complaining that the evidence was factually insufficient to support his adjudication did not forfeit his factual sufficiency complaints on appeal. 157 S.W.3d 823, 830–32 (Tex.App.-Fort Worth 2005, no pet.) (Dauphinot, J. dissenting). I do not agree that *In re M.R.*, 858 S.W.2d 365, 366 (Tex.1993), *cert. denied*, 510 U.S.

---

12. *See id* § 30.05(b)(2)(A).

13. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Hampton*, 165 S.W.3d at 693.

14. *In re J.B.M.*, 157 S.W.3d 823, 827–28 (Tex. App.-Fort Worth 2005, no pet.) (en banc).

15. *J.B.M*, 157 S.W.3d at 827–28; *see In re M.R.*, 858 S.W.2d 365, 366 (Tex.1993), *cert. denied*, 510 U.S. 1078, 114 S.Ct. 894, 127 L.Ed.2d 87 (1994).

16. *See Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex.2000); *see also Lubbock County, Texas v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex.2002) (explaining that, once the supreme court announces a proposition of law, the decision is considered binding precedent and it is not for a court of appeals to abrogate or modify such established precedent).

1078, 114 S.Ct. 894, 127 L.Ed.2d 87 (1994) requires that a factual sufficiency claim in a juvenile case must be preserved by a motion for new trial, because when *M.R.* was decided we did not have jurisdiction to review factual sufficiency in criminal cases. *In re J.B.M.,* 157 S.W.3d at 831. I would therefore address the merits of his complaints. Because the majority refuses to do so, I respectfully dissent.