# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-05-00806-CV
---

**In the Matter of O. G. J.**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-23,913, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

O.G.J. appeals from a juvenile court judgment of delinquency placing him on probation for the offense of evading detention. *See* Tex. Pen. Code Ann. § 38.04 (West 2003). In a single issue, O.G.J. complains that the evidence is factually and legally insufficient to support the court's finding that the allegations against him were true. We affirm the judgment.

## FACTS

The arresting officers testified that they first saw O.G.J. at approximately 2:30 a.m. on September 15, 2005. Senior Police Officer Kenneth Casaday of the Austin Police Department was dispatched to the Oak Creek Apartments in response to an anonymous citizen's 911 call about suspected drug activity in the laundry room at the apartment complex. The complex is located in a high-crime area known for narcotics trafficking. Casaday arrived at the complex at the same time as another uniformed officer who arrived in a marked patrol unit. Casaday was dressed in BDU (battle dress uniform) pants and a tactical vest, which was black with the word "Police" written on

the front and back in white letters and with the city logo and "Austin Police" on each sleeve. The other officer was dressed in a police uniform.

The laundry room was empty when the officers arrived, but they encountered two individuals nearby. Casaday observed O.G.J., a youth, and another male individual who Casaday recognized because Casaday had previously arrested him for "handguns and drugs." Casaday had "dealt with [the individual] so many times, I knew it was him." The uniformed officer approached O.G.J. and identified himself as a police officer. As the officers approached, the two individuals looked at the officers and started to walk away. The officers asked them to stop. As the two individuals "took off running to the back of the complex," the officers yelled "Stop, police—stop, police." The individuals continued to run. The officers chased them along the fence line of the gated apartment complex, continuing to observe them and yelling "Stop, police."

A third officer, Kelly Moore, was monitoring his police radio when he heard that officers had been dispatched to the apartment complex for an investigation of possible drug-dealing activity. Officer Moore testified that he was familiar with the area because it was known to him as an area for narcotics trafficking and "it's not uncommon for officers to be in foot pursuits once they've responded into that location." Moore headed in the direction of the complex, monitoring his radio. As he turned the corner to approach the laundry room, he saw the officers running and heard on the radio that the officers were in a "foot pursuit." He saw the two individuals running south along the west end of the complex, and he "paralleled that in the vehicle [he] was driving." He observed O.G.J. run between "two buildings back up towards the parking lot that I was driving in and then [he] began running parallel to my moving vehicle." Moore rolled his window down and

2

yelled at O.G.J., "Hey, police, stop." Moore testified that he then "also said something to the effect of 'you might as well stop,'" because "I've got you." O.G.J. continued running.

Moore exited his vehicle and chased O.G.J. O.G.J. continued running, trying to "fake" Moore out and avoid apprehension. Moore succeeded in getting O.G.J. to comply with a command to get on the ground when he warned O.G.J. he was going to use a taser. Moore testified that he clearly identified himself to O.G.J. as a police officer and he was also wearing BDU pants and a tactical vest showing "Police" in white letters on his chest area.

Finding the allegation that O.G.J. evaded detention true, the court summarized its factual findings:

> [I]n terms of the totality of the circumstances—first that they received the anonymous tip about individuals using drugs or selling drugs in the area. They get there, it's 2:30 in the morning, and they find an individual that is known to one officer to have had drugs and weapons, which can be, as to that person, a reason to approach and inquire, which an officer has the right to do. And then the chase begins.
> In terms of our Respondent, the Court is looking at—he is a juvenile. He appeared youthful. Curfew violation at 2:30 a.m. in the morning. If he was an adult, he would not have a curfew violation. If he was—that would be a non-criminal act, because it's not against the law for adults to be out at 2:30 in the morning. But there is a curfew violation for Respondent to be out at 2:30 in the morning.
> And with that—that gave the reasonable suspicion and the probable cause for the officers to approach, detain or lawfully arrest the Respondent. And he took off running. And he further evaded Officer Moore. There was an actual face-to-face and an actual encounter of him trying to maneuver and out maneuver Officer Moore.
> So based upon the totality of the circumstances, I find that the officers had a reasonable suspicion based on the Respondent, based on the curfew violation, to detain him and/or to lawfully arrest him for that violation.

3

**ANALYSIS**

O.G.J. contends that the evidence is insufficient to support an adjudication of delinquency for the offense of evading arrest. He urges that the evidence is insufficient to show that the police were attempting lawfully to detain him and there was no reason to detain him when he ran. This contention is not supported by the record.

***Standard of Review***

Adjudications of delinquency are based on the criminal standard of proof, and we review the sufficiency of the evidence as we would in a criminal case. *See* Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2006); *In re C.M.G.*, 180 S.W.3d 836, 838 (Tex. App.—Texarkana 2005, pet. denied). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

Our review of the factual sufficiency of the evidence is without the light most favorable to the verdict, and we determine whether the evidence supporting the verdict is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Watson v. State*, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040, at *39 (Tex. Crim. App. Oct. 18, 2006) (holding evidence is factually insufficient only when reviewing court objectively concludes that the great weight and preponderance of the evidence contradicts the fact finder's verdict). Under either standard, our role is that of appellate review, and the fact finder is the sole judge of the weight and

4

credibility of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111-12 (Tex. Crim. App. 2000). The trier of fact is free to accept or reject any or all of a witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).

Because O.G.J. failed to file a motion for new trial challenging the factual sufficiency of the evidence, the State urges that he failed to preserve this ground. *See In re M.R.*, 858 S.W.2d 365, 366 (Tex. 1993). In light of the split by the courts of appeals on whether a motion for new trial is required, and in the interest of justice, we will address the issue. *Compare In re D.J.H.*, 186 S.W.3d 163, 166 (Tex. App.—Fort Worth 2006, pet. filed) (citing *In re J.B.M.*, 157 S.W.3d 823, 827-28 (Tex. App.—Fort Worth 2005, no pet.) (en banc)) (motion for new trial necessary to preserve factual sufficiency ground), *with In re J.L.H.*, 58 S.W.3d 242, 245-46 (Tex. App.—El Paso 2001, no pet.) (motion for new trial raising factual sufficiency challenge is not required); *see also In re E.U.M.*, 108 S.W.3d 368, 371-72 (Tex. App.—Beaumont 2003, no pet.) (discussion of issue, concluding motion for new trial required with jury findings); *In re F.F.G.*, No. 03-05-00854-CV, 2006 Tex. App. LEXIS 10306, at *4-5 (Tex. App.—Austin Nov. 29, 2006, no pet. h.) (motion for new trial only required to preserve complaints about the factual sufficiency of the evidence supporting jury findings).

### *Evidence Sufficiency*

A person commits the offense of evading arrest or detention if he intentionally flees from a person whom he knows is a peace officer attempting lawfully to arrest or detain him. Tex. Pen. Code Ann. § 38.04(a); *Hazkell v. State*, 616 S.W.2d 204, 205 (Tex. Crim. App. 1981). The offense of evading detention consists of the following elements: (1) a person (2) intentionally

flees (3) from a peace officer (4) with knowledge he is a peace officer (5) who is attempting to detain the defendant and (6) the attempted detention is lawful. Tex. Pen. Code Ann. § 38.04(a); *see also Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986); *Rodriguez v. State*, 578 S.W.2d 419, 419 (Tex. Crim. App. 1979). O.G.J. does not dispute the legal sufficiency of the evidence to support the first five elements of the offense.

Because the attempted detention was based on an anonymous tip and the officers were merely attempting to engage in an "encounter" with O.G.J., he contends that there was no lawful reason to detain him. Thus, O.G.J. challenges only the final element—whether the attempted detention was lawful.

Courts have recognized three distinct categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). An encounter needs no justification, a detention requires reasonable suspicion, and an arrest must be supported by probable cause. *Johnson*, 912 S.W.2d at 235. Asking questions is an essential part of police investigations, and a police officer may approach an individual on the street or in a public place and ask questions of him. *Perez*, 85 S.W.3d at 819; *see also Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004); *Adams v. Williams*, 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."); *Gurrola v. State*, 877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994). The mere approach of police officers causes only minimal inconvenience. *Johnson v. State*, 864 S.W.2d 708, 715 (Tex. App.—Dallas 1993), *aff'd*, 912 S.W.2d 227

(Tex. Crim. App. 1995).  Requiring that an individual yield to a show of authority by the police serves the public interest by encouraging compliance with police orders without sacrificing the individual's rights to challenge the lawfulness of those orders.  *Id*. at 723.  But a citizen is free to terminate an encounter at any time.  *Gurrola*, 877 S.W.2d at 302-03.

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.  *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).  An investigative detention is a confrontation of a citizen by law enforcement officers wherein the citizen yields to a display of authority and is temporarily detained for purposes of an investigation.  *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).  Reasonable suspicion exists when, based on the totality of circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.  *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Here, the arresting officers testified that they were dispatched to the apartment complex based on a citizen's suspicions of illegal drug activity.  At 2:30 a.m., they encountered O.G.J. and another person known to them from previous arrests for guns and drugs in the vicinity of the laundry room where they had been told to look.  O.G.J. and the other individual were the only persons in view near the laundry room at the late hour; O.G.J. was a juvenile, and the other person was known to the police for criminal activity.  The police officers thus observed circumstances corroborating the tip and either supporting a reasonable suspicion of criminal activity or providing

7

them reason to make further inquiry. *See Hiibel*, 542 U.S. at 185 (law enforcement officer's reasonable suspicion that person may be involved in criminal activity permits officer to stop person for brief time and take additional steps to investigate further). These circumstances included the location's reputation as a high drug trafficking area, the time of night when the officers encountered the individuals, O.G.J.'s age and apparent violation of the city curfew ordinances, and O.G.J.'s association with a person known to the police for criminal activity. As the police approached the individuals, they began to run. The police made a show of authority by shouting at the two individuals to stop. O.G.J. and the other individual ran away from them. Another police officer, arriving on the scene in a police van, also advised them to stop and then joined the chase. The police officers were dressed in police uniforms and clearly identified.

Based on the officers' observations that corroborated the information they had been dispatched to investigate, the officers were entitled to draw inferences from the facts in light of their experiences that justified a temporary detention. *Terry*, 392 U.S. at 21. In addition, flight from a show of authority is a factor in considering whether there is reasonable suspicion. *See, e.g.*, *Brooks v. State*, 76 S.W.3d 426, 434 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Reyes v. State*, 899 S.W.2d 319, 324-25 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd); *see also United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992). Ample evidence exists to demonstrate that the officers had a basis for approaching O.G.J. and for temporarily detaining him to investigate the conduct that initiated the stop. O.G.J.'s refusal to comply with the officers' repeated requests was an attempt to evade detention. The evidence is both legally and factually sufficient for the trial court to find the allegations of evading detention to be true.

**CONCLUSION**

Having overruled O.G.J.'s issue, we affirm the judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: December 20, 2006

9