

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00122-CV
No. 07-23-00123-CV
No. 07-23-00124-CV

## IN THE MATTER OF O.I., A CHILD

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court Nos. 7244J, 7387J, 7390J, Honorable James W. Anderson, Presiding

August 28, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

This case involves three appeals brought by Appellant, O.I.,[1] a juvenile, from judgments issued following an adjudication hearing[2] wherein the trial court found true the following predicate offenses:

---

[1] Appellant turned sixteen years old in December 2022.

[2] Cause Nos. 7244J, 7387J, and 7390J were consolidated for bench trial. Appellant waived his right to a trial by jury.

- Cause No. 7244J[3] – aggravated assault with a deadly weapon;[4] evading arrest or detention;[5]

- Cause No. 7387J[6] – assault of a public servant;[7] and

- Cause No. 7390J[8] – assault of a public servant (three counts).[9]

Having found Appellant engaged in delinquent conduct, the trial court issued an order in each cause committing Appellant to the Texas Juvenile Justice Department for an indeterminable period of time not to exceed his nineteenth birthday. On appeal, O.I. asserts (1) the State's evidence was legally insufficient to support the trial court's finding that O.I. engaged in delinquent, or conduct indicating a need for supervision and (2) abused its discretion by sentencing Appellant to confinement in the Texas Juvenile Justice Department (TJJD).

For Cause No. 7244J (Appeal ending in -122), we sustain Appellant's first issue because we agree there is insufficient evidence to support the trial court's finding. We therefore set aside that order of commitment. In the other two causes, however, we find sufficient evidence supports the trial court's findings and that the trial court did not abuse its discretion in committing Appellant to confinement in the TJJD for the ordered period. We therefore affirm the orders of commitment for the Appeals ending in -123 and -124.

---

[3] Appeal No. 07-23-00122-CV.

[4] TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (a second-degree felony).

[5] TEX. PENAL CODE ANN. § 38.04(a), (b) (a Class A misdemeanor).

[6] Appeal No. 07-23-00123-CV.

[7] TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (felony of the third degree).

[8] Appeal No. 07-23-00124-CV.

[9] TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1).

2

**Standards**

The Juvenile Justice Code, found in Title 3 of the Texas Family Code, governs the proceedings in all cases involving delinquent conduct by a person who was a child (at least ten years old but less than seventeen years old) at the time of the conduct. *See* TEX. FAM. CODE ANN. §§ 51.02(2)(A), 51.04(a). The Code defines delinquent conduct as, among other things, "conduct, other than a traffic offense, that violates a penal law of this state . . . punishable by imprisonment or confinement in jail. *Id.* at § 51.03(a)(1).

In a juvenile proceeding, the trial court must conduct an adjudication hearing so that a factfinder can determine whether the juvenile engaged in delinquent conduct. *In re I.F.M.*, 525 S.W.3d 884, 886 (Tex. App.—Houston [14th Dist.] 2017, no pet.). *See* TEX. FAM. CODE ANN. § 54.03. If the factfinder determines the juvenile engaged in delinquent conduct, the trial court then conducts a disposition hearing. *See id.* at § 54.03(h). The disposition hearing is comparable to sentencing. *In re I.F.M.*, 525 S.W.3d at 886.

The burden of proof at the adjudication hearing is the beyond-a-reasonable-doubt standard applicable in criminal cases. TEX. FAM. CODE ANN. § 54.03(f).[10] We therefore review the sufficiency of the evidence under the standard used in criminal cases. *In re B.S.*, No. 07-15-00148-CV, 2015 Tex. App. LEXIS 11822, at *3–4 (Tex. App.—Amarillo Nov. 17, 2015, no pet.). The evidence is viewed in a light most favorable to the factfinder's determination to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Id.*

---

[10] "The child shall be presumed to be innocent of the charges against the child and no finding that a child has engaged in delinquent conduct or conduct indicating a need for supervision may be returned unless the state has proved such beyond a reasonable doubt." *Id.*

3

A trial court has broad discretion to determine a suitable disposition for a juvenile found to have engaged in delinquent behavior. *In re A.W.B.*, 419 S.W.3d 351, 359 (Tex. App.—Amarillo 2010, no pet.). A court abuses its discretion when it acts unreasonably or arbitrarily, or without reference to any guiding principles. *In re C.J.*, No. 01-08-00771-CV, 2009 Tex. App. LEXIS 5080, at *6 (Tex. App.—Houston [1st Dist.] July 2, 2009, no pet.) (mem. op.). A trial court need not exhaust all possible alternatives before committing a juvenile to TJJD. *In re W.J.P.*, No. 01-19-00988-CV, 2021 Tex. App. LEXIS 5551, at *6 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.) (mem. op.). Before a court may commit a juvenile to TJJD, it must find, among other things, that: (1) it is in the child's best interests to be placed outside of his home; (2) reasonable efforts were made to prevent or eliminate the need for removal and return of the child to his home; and (3) the child, in his home, cannot be provided the quality of care, and level of support and supervision that he needs to meet the conditions of probation. TEX. FAM. CODE ANN. § 54.04(i)(1).

**Analysis**

### Appeal 07-23-00122-CV (Trial Court No. 7244J)

In February, the State filed an amended petition for adjudication alleging two counts: (1) that O.I. intentionally, knowingly, or recklessly assaulted Billy Sandridge by hitting him with a deadly weapon, a pole, which in the manner of its use and intended use was capable of causing death and serious bodily injury to Sandridge during the commission of the assault.; and (2) that O.I. intentionally fled from Jacob Charter, who the defendant knew was a peace officer who was attempting lawfully to arrest or detain him. Because the incidents underlying the alleged offenses occurred more than a week apart, we undertake their review under separate headings.

4

**Count 1**

During the adjudication hearing, Billy Sandridge, an employee of a convenience store, testified that on January 4, 2023, he was outside working on a gas pump. Sandridge felt "something" suddenly hit him. Afterward, he felt pain in and sustained bruising to his right hip.[11] Although he was unable to see his assailant at the time of the assault, Sandridge later identified Appellant from store video footage.

The video, which was admitted into evidence without objection, showed Sandridge in the convenience store parking lot, bent down near a gas pump. O.I. is seen walking across the lot toward Sandridge, carrying what appears to be a long slender object. When O.I. reached Sandridge, he hit Sandridge in a sideways stroke and immediately fled. There is no evidence of words being exchanged.

In its original indictment, the State originally alleged Appellant struck Sandridge with a "deadly weapon, to wit: a stick." Its first amended indictment again alleged Sandridge was struck with a "deadly weapon, to wit: a stick." Six days before the adjudication hearing, the State amended its indictment a second time; it now alleged Appellant struck Sandridge with "a deadly weapon, to wit: a *pole*." (Emphasis added). Regardless of whether the item was a "stick" or a "pole," Appellant asserts insufficient evidence supports a finding that the object Appellant used to strike Sandridge was a deadly weapon.

---

[11] Sandridge also testified he had not returned to work because the assault caused psychological issues due to an incident that occurred several years past.

A person commits an aggravated assault if the person "intentionally, knowingly, or recklessly causes serious bodily injury to another . . . or uses or exhibits a deadly weapon during the commission of the assault." *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. A "deadly weapon" includes "anything that in the manner of its use and intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(B).[12]

Three of our sister courts have adopted factors for assessing whether an object's manner and intended use demonstrates its capability to cause death or serious bodily injury:

1. the intended use of the object,

2. its size and shape,

3. the physical proximity of the parties,

4. the manner in which the assailant allegedly used the object,

5. the severity of any wounds inflicted,

6. the accused's words,

7. any testimony that the complainant feared death or serious bodily injury, and,

8. any testimony as to the weapon's potential for causing death or serious bodily injury.

*Alexander v. State,* No. 01-18-01041-CR, 2019 Tex. App. LEXIS 9331, at *6 (Tex. App.—Houston [1st Dist.] Oct. 24, 2019, no pet.)*; Simpson v. State*, No. 12-18-00039-CR, 2018 Tex. App. LEXIS 9060, at *10 (Tex. App.—Tyler Nov. 5, 2018, pet. ref'd)*; Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). No single factor is

---

[12] "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that caused death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46).

determinative, and "an appellate court must examine each case on its own facts to determine whether the fact finder could have concluded from the surrounding circumstances that the object used was a deadly weapon." *In re S.B.*, 117 S.W.3d 443, 447 (Tex. App.—Fort Worth 2003, no pet.).

The testimony indicated Sandridge was hit by "something." The admitted video shows Appellant struck Sandridge with a long, slender-sized white object. No one described the object, its measurements, what it was made of, or whether it was flexible or rigid. No one testified as to the object's intended use or its potential for causing death or serious bodily injury. Appellant made no statement when he struck Sandridge. He struck Sandridge in a fleshy part of the body with a single sideways stroke and ran away. Sandridge suffered bruising.

We find there was no evidence Appellant used a deadly weapon or intended it to be used to cause serious bodily injury. This case is distinguishable from those urged by the State in which the court of appeals upheld findings that defendant used a deadly weapon: *McElhaney v. State*, 899 S.W.2d 15 (Tex. App.—Tyler 1995, pet. ref'd untimely) and *Naranjo v. State*, No. 05-00-01879-CR, 2001 Tex. App. LEXIS 5162 (Tex. App.—Dallas 2001, pet. ref'd). In *Naranjo*, the court of appeals assessed defendant's use of an object interchangeably described as a "pipe" or a "pole" that was four feet long, one inch in diameter, and made of metal. Evidence shows Naranjo used the pole to strike the victim across the head and collarbone, while Naranjo's companion simultaneously hit the victim with his fists. After his companion departed, Naranjo continued beating the victim while he was crawling away until the victim leaned against an apartment door and fell into the apartment when the door opened. One witness described the injuries as being all

7

over the victim's face and body, "including jab wounds made by a hollow object." *Naranjo*, 2001 Tex. App. LEXIS 5162, at *2–8. "[The victim] further testified the blows from the pole caused him bodily injuries and pain and caused him to suffer from epilepsy and seizures for which he must take medications twice daily." *Id.* at *3.

In *McElhaney*, the court of appeals reached a deadly-weapon finding based on evidence physically describing the pipe ("an iron pipe, roughly two feet in length and an inch in diameter"), its intentional use (three blows to the victim's head and one to his arm while a companion exclaimed, "I told you to hit him hard"), and the victim's testimony that the pipe was capable of causing death or serious injury. 899 S.W.2d at 17.

Here, the evidence does not describe the make-up of the object: plastic, metal, or wood? Instead of multiple or repeated blows to areas susceptible to causing death or serious injury, the evidence shows Appellant struck Sandridge once and ran away. No evidence was offered regarding whether the object was capable of causing death or serious bodily injury. After reviewing the record evidence in a light most favorable to the adjudication, we find that any rational trier of fact could not have found beyond a reasonable doubt that O.I. committed an aggravated assault with a deadly weapon. O.I.'s issue regarding count one is sustained.

**Count 2**

During the adjudication hearing, Officer Jacob Charter testified that on January 12, 2023, he responded to a call from a convenience store employee wanting an individual trespassed from the premises. The employee described the individual and his last direction of travel. Shortly thereafter, Officer Charter spotted Appellant walking down the

8

sidewalk. Appellant matched the employee's description. Charter testified Appellant "wasn't going to be detained." His intention was to inform Appellant "that he was being trespassed from [the convenience store] at which I was going to have him—try to see if he would—if he would fill out a trespass warning." Officer Charter testified he was attempting to have a "consensual encounter."

Officer Charter initially rolled down the window of his marked car and said to Appellant, "Hey, let me holler at you right quick." Officer Charter then exited his car, stood 10 to 15 feet from Appellant, and repeated, "Hey, let me talk to you right quick." When Appellant stopped and inquired what the officer wanted, Charter informed Appellant that the convenience store wanted him trespassed. O.I. responded with an expletive, threw a soft drink at the officer, and ran away. Charter had no further contact with Appellant.

Appellant asserts the State's evidence is insufficient to establish Appellant evaded arrest or detention because Officer Charter was conducting a consensual encounter whereby Appellant was free to leave at any time. The State contends its officer was conducting an investigative detention when Appellant ran away. For the following reasons, we agree with Appellant that the finding he was evading arrest or detention lacks evidentiary support.

A person commits the offense of evading arrest or detention if (1) he intentionally flees (2) from a person he knows is a peace officer or federal special investigator (3) attempting *lawfully to arrest or detain him*. TEX. PENAL CODE ANN. § 38.04(a) (emphasis added). There are three types of police-citizen interactions: (1) consensual encounters, which do not implicate the Fourth Amendment; (2) investigative detentions, which are Fourth Amendment seizures of limited scope and duration that must be supported by a

reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, which are reasonable only if supported by probable cause. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). In the first category, "[a]n encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). The citizen, of course, is not required to do anything, as he may terminate the encounter at any time. *Id.* While consensual encounters with police officers may be uncomfortable for citizens, they are not Fourth Amendment seizures. *Wade*, 422 S.W.3d at 667.

An investigative detention can occur when a person yields to a police officer's show of authority under a reasonable belief that he is not free to leave. *Crain*, 315 S.W.3d at 49. Under such circumstances, courts assess whether the police officer conveyed a message to the citizen indicating compliance was required. *Id.* The Court of Criminal Appeals in *Crain* quoted an opinion from the U.S. Supreme Court discussing sample factors a court might assess to determine whether a detention has occurred:

> Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* at 49–50 (*quoting United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980)). An investigative detention requires that an officer have a reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts would lead the officer to conclude a particular person is, has been, or soon will be engaged in criminal activity. *Crain*, 315 S.W.3d at 49. Reasonable

suspicion must exist at the time the officer approaches, *id.* at 52, and any detention for questioning is limited to the reason for the seizure. *Wade*, 422 S.W.3d at 669.

In this case, the evidence shows that Officer Charter was engaged in a consensual encounter, one in which the officer lacked specific facts to conclude Appellant "ha[d] been, or soon [would] be engaged in criminal activity." Officer Charter was seeking Appellant for purposes of issuing a trespass warning, or "to see . . . *if* [Appellant] would fill out a trespass warning" (emphasis added).[13] He agreed Appellant was free to leave at any time. The case cited by the State in support of its claim that Officer Charter was conducting an investigative detention is inapposite. In *Stevenson v. State,*[14] the Fourteenth Court of Appeals held the evidence was such that "a rational trier of fact could have found that the appellant intentionally fled from a person he knew was a police officer attempting to "detain him for the purpose of questioning or investigating possible criminal activity." The evidence in *Stevenson* involved an incident in which officers were dispatched to rectify a recurring trespassing problem by several "non-resident males" at an apartment complex. When one officer approached some of the men, two fled toward a back fence, consistent with the conduct of past trespassers. A second officer waiting on the other side of the fence, repeatedly yelled at the suspect to "stop." While the suspect ignored the demand and attempted to escape by jumping back over the fence,

---

[13] A person commits criminal trespass if (1) he enters or remains on the property of another without effective consent and (2) the person had notice that entry is forbidden or received notice to depart but failed to do so. TEX. PENAL CODE ANN. § 30.05(a). Notice may be oral or written. *Id.* at (b)(2)(A). *See In re D.J.H.*, 186 S.W.3d 163, 165–66 (Tex. App.—Fort Worth 2006, pet. denied). There is no evidence suggesting Officer Charter was investigating a possible trespass violation related to either element of criminal trespass.

[14] No. B14-91-01112-CR, 1993 Tex. App. LEXIS 378 (Tex. App.—Houston [14th Dist.] 1993, no pet.).

that officer continuously yelled, "Stop, police officer," as he chased and apprehended the man. *Id.* at *2.

None of those facts exist in the present case. Officer Charter did not observe a trespass in progress but observed Appellant walking down a street. Unlike the officer in *Stevenson*, Officer Charter did not testify he was trying to detain Appellant. He did not yell "Stop, police officer" or use other language or tone of voice to indicate he was expecting Appellant to comply. Instead, he asked Appellant to "let me holler at you" and "let me talk to you." Based upon this record, we find the State's evidence insufficient to establish Appellant committed the offense of evading arrest or detention.

Accordingly, we sustain Appellant's first issue and reverse the trial court's judgment and disposition order in Cause No. 7244J. *See In re R.S.*, No. 02-22-00165-CV, 2022 Tex. App. LEXIS 8993, at *3 (Tex. App.—Fort Worth Dec. 8, 2022, no pet.) (juvenile court abuses its discretion if it orders a child committed to TJJD without evidence to support required predicate findings).

## Appeal 07-23-00123-CV (Trial Court No. 7387J)

In his next appeal, Appellant argues the evidence is insufficient to prove he committed assault upon juvenile supervision officer Vicente Gonzales. In February 2023, the State filed an amended petition for adjudication alleging two counts: (1) assault on Gonzales by punching him in the mouth, knowing at the time that he was a public servant in the lawful discharge of his official duty, and (2) assault on J.C., fellow detainee, by punching and kicking him. O.I.'s brief candidly admits the State's evidence was sufficient as to the second count (assault on J.C.).

12

A person commits a Class A misdemeanor offense if the person intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01 (a)(1), (b). An actor commits a felony of the third degree if the actor intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows is "a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant." *Id.* at (b)(1).

We disagree with Appellant that the evidence is insufficient to prove Appellant assaulted Gonzales, a public servant. Gonzales testified that on January 20, 2023, he was working as a Juvenile Supervision Officer (JSO) at the Youth Center of the High Plains. O.I. refused to return to his room or follow directions from the staff. A video shows O.I. knocking a water container off a table, resisting attempts by several JSOs, including Gonzales, to physically restrain him, and throwing punches at the JSOs.[15] Gonzales testified that when he attempted to restrain O.I. by grabbing his legs, O.I. punched him in the lip, causing pain and a small laceration. Viewing the evidence in a light most favorable to the verdict, we find that a rational factfinder could have found the essential elements of the assault beyond a reasonable doubt. Accordingly, we affirm the trial court's judgment in this cause.

**Appeal 07-23-00124-CV (Trial Court No. 7390J)**

In February 2023, the State filed an amended petition for adjudication alleging that on or about February 16, O.I. assaulted four JSOs by striking them with a closed fist:

---

[15] In the video, Appellant is the only one throwing punches.

13

Jerramy Palmer (Count 1), Craig Miller (Count 2), Manuel Riva (Count 3), and Joe Renteria (Count 4). TEX. PENAL CODE ANN. § 22.01 (a)(1), (b)(1). During the hearing, Palmer testified the assaults occurred when the JSOs were removing items from O.I.'s room because he was in disciplinary seclusion. Each JSO testified about the manner in which Appellant struck him.

In his brief, Appellant candidly admits that the State presented sufficient evidence of assault regarding three officers: Palmer, Miller, and Riva (Counts 1–3). However, as to the fourth officer, Renteria, Appellant asserts the State's evidence of assault was deficient because Renteria testified he was struck in the face, and it hurt, but that he was not injured. According to Appellant, "The fact that the alleged victim did not believe that he was injured indicates that O.I. should not have been charged with assault on a public servant because the element of bodily injury was not established beyond a reasonable doubt." Because the record supports conflicting inferences related to whether Renteria was injured, we presume the factfinder resolved the conflict in favor of the verdict; and defer to that determination. *See Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) (citing *Hooper v. State*, 214 S.W.3d 9, 12 (Tex. Crim. App. 2007)).

After reviewing the evidence in a light most favorable to the judgment, we find that any rational trier of fact could have found Appellant committed the assaults alleged in both counts and affirm the trial court's judgment finding there was evidence beyond a reasonable doubt that O.I. did engage in delinquent conduct in Cause No. 7390J.

**Disposition Phase**

In Cause Nos. 7387J and 7390J,[16] in which there was sufficient evidence of delinquent conduct indicating a need for supervision, the trial court's disposition ordered that Appellant "be placed in the care, custody and control of the Texas Juvenile Justice Department (TJJD) for an indeterminate period of time not to exceed his 19th birthday." *See* TEX. FAM. CODE ANN. § 51.03(a)(1), 54.03. *See generally* TEX. HUM. RES. CODE ANN. §§ 245.001–.151. Having reviewed all the evidence of record, we agree with Appellant that there was sufficient evidence upon which the trial court exercised its discretion and did not err in its application of discretion when issuing its disposition order. Accordingly, we affirm the trial court's disposition orders in Cause Nos. 7387J and 7390J.

**Conclusion**

We reverse the trial court's judgment and disposition order in Cause No. 7244J. We affirm the judgments and disposition orders in Cause Nos. 7387J and 7390J.

Lawrence M. Doss
Justice

Do not publish.

Quinn C.J., concurring and dissenting in part.
Yarbrough, J., concurs in the result.

---

[16] Because we reverse the trial court's judgment and disposition order in Cause No. 7244J, we need not address Appellant's issues related to that cause.